UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EMANUEL PIZZO,                                    Case No. 13-11344

               Plaintiff,                        Georg Caram Steeh
v.                                                United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                  Michael Hluchaniuk
                                                  United States Magistrate Judge
               Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 15)**

## I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On March 26, 2013, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge George

Caram Steeh referred this matter to the undersigned for the purpose of reviewing

the Commissioner's decision denying plaintiff's claim for a period of disability

and disability insurance benefits.  (Dkt. 3).  This matter is before the Court on

cross-motions for summary judgment.  (Dkt. 12, 15).  Plaintiff also filed a reply in

support of his motion.  (Dkt. 16).

B.    Administrative Proceedings

Plaintiff filed the instant claims on October 7, 2010, alleging that he became

disabled on August 1, 2009.  (Dkt. 7-2, Pg ID 44).  The claims were initially

disapproved by the Commissioner on January 19, 2011.  (Dkt. 7-2, Pg ID 44).

Plaintiff requested a hearing and on October 27, 2011, plaintiff appeared with

counsel before Administrative Law Judge (ALJ) Oksana Xenos, who considered

the case de novo.  In a decision dated December 20, 2011, the ALJ found that

plaintiff was not disabled.  (Dkt. 7-2, Pg ID 44-53).  Plaintiff requested a review of

this decision and on February 11, 2013, the ALJ's decision became the final

decision of the Commissioner when, after the review of additional exhibits,[1] the

Appeals Council denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 31-34);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**REVERSED**, and that this matter be **REMANDED** for further proceedings under

sentence four.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 54 years old at the time of the most recent administrative

hearing and was 52 years old on the alleged disability onset date.  (Dkt. 7-2, Pg ID

46).  Plaintiff had past relevant work as a steelworker.  (Dkt. 7-2, Pg ID 51).  The

ALJ applied the five-step disability analysis to plaintiff's claim and found at step

one that plaintiff had not engaged in substantial gainful activity since the alleged

onset date.  (Dkt. 7-2, Pg ID 46).  At step two, the ALJ found that plaintiff's spine

disorder, arthritis, diabetes, hypertension, carpal tunnel syndrome and obesity

were "severe" within the meaning of the second sequential step.  (Dkt. 7-2, Pg ID

46).  At step three, the ALJ found no evidence that plaintiff's combination of

impairments met or equaled one of the listings in the regulations.  (Dkt. 7-2, Pg ID

47).  At step four, the ALJ found that plaintiff could not perform his past relevant

work.  (Dkt. 7-2, Pg ID 51).  The ALJ concluded that plaintiff had the following

residual functional capacity

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except the claimant cannot climb
> ladders, ropes, or scaffolds; can occasionally stoop and

> crawl; can frequently, but not constantly, perform
> activities requiring handling or fingering; can
> occasionally reach overhead with the left upper extremity
> (non-dominant); and requires a sit/stand option.

(Dkt. 7-2, Pg ID 47). At step five, the ALJ denied plaintiff benefits because

plaintiff could perform a significant number of jobs available in the national

economy and was not under a disability. (Dkt. 7-2, Pg ID 52-53).

B.    <u>Plaintiff's Claims of Error</u>

Plaintiff's first claim of error is that the ALJ only gave limited weight to the

opinion of plaintiff's treating orthopedic surgeon, Dr. Michael Baghdoian.

According to plaintiff, as demonstrated by *Gayheart v. Commissioner of Social*

*Security*, 710 F. 3d 365, 377 (6th Cir. 2013), her reliance on the one-time

consultative examiner, Dr. Jack Salomon, an internist, to diminish Dr. Baghdoian,

a treating orthopedic surgeon, is legal error. In any event, plaintiff contends that

Dr. Salomon actually supports Dr. Baghdoian's conclusions. Dr. Salomon found

an "ataxic gait" (Tr. 277) which is defined as "an unsteady, staggering gait

pattern." Tabers Cyclopedic Medical Dictionary, Edition 21, p. 918 (2009). In

addition, he diagnosed "lumbar radiculopathy and cervical radiculopathy,"

findings consistent with Dr. Baghdoian and Dr. Barker. (Tr. 275). Dr. Salomon

did not complete the section on current abilities (restrictions) and test results

(reflexes of affected extremity). (Tr. 276). According to plaintiff, the alleged

inconsistency between plaintiff's testimony and the consultative examiner's history concerning walking is explained as follows. Plaintiff testified that he could walk one block, presumably, at one time and without stopping due to incapacitating discomfort. (Tr. 7). Obviously, he might push himself somewhat farther with greater pain. Implicitly, he walks at a very slow pace. Therefore, plaintiff contends that it is not unreasonable to assume that he walks a number of times daily totaling 45 minutes. Plaintiff also argues that a focus on isolated parts of the record, such as examples taken out of context or offset by other examples, cannot support diminishing the weight of a treating physician opinion. *Gayheart*, at 378.

According to plaintiff, the ALJ's error in this regard is compounded by further examples. The supposed inconsistency between Dr. Baghdoian's assessment as to sitting and plaintiff's testimony that he spends 75% of his time in a recliner is easily explained. (Tr. 303, 308, 47, 48). Plaintiff does not engage in normal sitting while in a recliner but actually reclines with his legs elevated to waist level. (Tr. 47, 48). The ALJ reports that the limitation of standing for 20 minutes and more than 2 hours in a day conflicts with the limitation of total ability to sit, stand and walk less than 2 hours in an 8 hour work day. Again, plaintiff contends that the explanation is simple. First, the more than 2 hours of standing is not limited to the work day. Second, the form reports less than 2 hours of sitting

and less than 2 hours of standing and walking in an 8 hour working day.  (Tr. 303, 308).  The only consistent way to read this form is to assume that the 20 minute limitations applies to sitting and standing at one time and the less than 2 hour limitation applies to an 8 hour working day.  Finally, the areas where Dr. Baghdoian's form and plaintiff's testimony allegedly conflict does not detract from but actually enhances credibility because one would not expect their opinions to perfectly match.  Plaintiff suffers from pain.  Only the person experiencing pain knows its degree and effect and people react differently to pain.  The ALJ has not accounted for this.  In any event, the ALJ improperly diminished Dr. Baghodian's opinion with an assessment of plaintiff's credibility.  According to plaintiff, the two issues are unconnected and require a different evaluation.  And, plaintiff claims that the conflict is specious at best.

In addition, contrary to what is stated above, the ALJ concedes that " . . . the claimant's obesity exacerbates his ability to perform basic work activities."  (Tr. 17).  The ALJ is not allowed to "cherry pick" those aspects of Dr. Baghdoian's opinion that support her conclusions and reject others.  Greater scrutiny cannot be applied to a treating source to justify giving such opinion reduced weight.  *Gayheart*, at 379-380.  Dr. Baghdoian evaluated, treated and tested plaintiff.  (Tr. 272, 273, 300 thru 310).  Dr. Baghdoian, an orthopedic surgeon, is well qualified to handle plaintiff's complaints.  His findings are consistent with the record as a

Report and Recommendation
Cross-Motions for Summary Judgment
*Pizzo v. Comm'r*; Case No. 13-11344

whole as demonstrated by testing and the opinions of other doctors and plaintiff

contends that there is no other evidence that conflicts with his evaluation.

Thus, the ALJ's rejection of his opinion is legal error and bereft of substantial

evidence.  In addition, plaintiff contends that the ALJ didn't even give Dr.

Baghdoian's opinion proper deference or make any effort to re-contact him

contrary to SSR 96-2p and SSR 96-5p.

The government's vocational expert (VE) testified that the incapacity to do

8 hours of combined sitting, standing and walking (Tr. 303, 308, 57), walk around

every 20 minutes for 10 minutes (Tr. 304, 308, 59), be absent 3 or more times per

month (Tr. 305, 310, 58), and the need to lay down frequently (Tr. 288, 60) are

preclusive of work.  The VE also testified that a limitation of less than 2 hours of

standing and walking in an 8 hour working day is preclusive of light work.  (Tr.

303, 308, 59) and the incapacity to stoop and bend limits one to sedentary work.

(Tr. 304, 309, 60).  Further, that a limitation of the use of the hands for grasping,

turning and twisting objects to 50% of an 8 hour working day and a limitation of

use of the arms for reaching overhead or straight out to 50% of an 8 hour working

day would individually preclude the light jobs described by the VE in response to

the ALJ's hypotheticals.  (Tr. 304, 305, 309, 60, 61, 62).  Finally, the VE testified

that 2 unscheduled breaks per 8 hour working day lasting 10 minutes apiece would

preclude unskilled work.  (Tr. 304, 308, 60).  It should be noted that the VE had

Report and Recommendation
Cross-Motions for Summary Judgment
*Pizzo v. Comm'r*; Case No. 13-11344

previously testified that a limitation of frequent handling would not preclude the jobs given in response to the ALJ's hypotheticals. (Tr. 55, 56). However, she had thought in terms of 66 2/3% of an 8 hour working day. (Tr. 62). The limitations stated above are those given by Dr. Baghdoian, except for the need to lay down frequently, which is given by Dr. Barker. (Tr. 288). According to plaintiff, there is no evidence that conflicts with Dr. Baghdoian's assessment of total disability including the opinions of Dr. Salomon and Dr. Barker. Moreover, since plaintiff "is unable to perform any past relevant work" (Tr. 21), is "closely approaching advanced age" (Tr. 21), has a high school education (Tr. 21), and no transferable skills (Tr. 166), benefits would be awarded even with the capacity to do sedentary work. *See* Appendix 2 to Subpart P of Part 404, Medical-Vocational Guidelines. Rule 201.12. In summary, plaintiff maintains that the ALJ's failure to give Dr. Baghdoian controlling weight or at least proper deference constitutes legal error and a lack of substantial evidence mandating a reversal and an award of benefits.

Plaintiff also finds fault with the ALJ's dismissal of Dr. Barker's findings based on the following: (a) he may have not been familiar with the social security definitions of disability; (b) his statements as to disability may have only applied to plaintiff's past work; (c) his opinion is less persuasive as it "contrasts sharply" with other evidence of record; (d) it was generated through an attorney referral. (Tr. 20). With respect to Items a and b, plaintiff argues that Dr. Barker is a

physiatrist, a specialty which regularly evaluates patients for functional capacity and the ability to return to work. Dr. Barker specifically used the term sedentary, a Social Security term of art. If there was any doubt as to his opinion on disability, he stated that plaintiff could not do manual labor, work in the steel business nor do sedentary work. Specifically, he could not do prolonged sitting, would need to frequently change position and lay down. Thus, Dr. Barker was correct in finding plaintiff to be "totally disabled." With respect to Item c, plaintiff contends that Dr. Barker's conclusions do not "contrast sharply with the other evidence of record." Rather, his opinion is consistent with the opinion of Dr. Baghdoian and Dr. Salomon, the government's examining internist, who found cervical and lumbar radiculopathy. While Dr. Salomon made no comment on disability or restriction, plaintiff contends that the diagnosis of radiculopathy is consistent with same. In summary, plaintiff maintains that there is no evidence that conflicts with the conclusions of both Dr. Barker and Dr. Baghdoian.

With respect to Item d above, the ALJ states that she cannot ignore that Dr. Barker's evaluation was generated by an attorney referral implying that that fact and that fact alone diminishes its persuasiveness. According to plaintiff, this is pure speculation and plaintiff argues that all evidence of record is to be measured objectively. The ALJ cites no reason as to why Dr. Barker's conclusions should be rejected, particularly given that Dr. Barker's findings are supported by a

plethora of objective findings including: (a) MRI performed on November 10, 2010 showing mild spinal stenosis at L1-L2, L2-3, L3-4 and L4-5; (b) MRI performed on November 10, 2010 showing L5-S1 protruding and effacing the S1 nerve roots, L4-5 protruding near right, left nerve roots and abutting the foraminal right L4 nerve root and L3-4 protruding nearer to right than left L4 nerve roots (Tr. 298, 299); (c) Electromyographic examination of the lower extremity performed on January 12, 2011 showing chronic bilateral L5, S1 radiculopathy (Tr. 290); (d) Electrodiagnostic study of lower extremities performed on April 27, 2006 showing mild sensory neuropathy (Tr. 211); (e) Electromyographic examination of the upper extremity showing right carpal tunnel syndrome, left ulnar sensory nerve entrapment at the wrist, chronic right C8 radiculopathy and chronic left C7, C8 radiculopathy (Tr. 292); (f) MRI performed on November 10, 2010 shows disk displacement flattening the cervical cord, moderate spinal stenosis and mild biforaminal stenosis at C5-6, and disk displacement flattening the cervical cord with mild spinal stenosis at C6-7 (Tr. 294, 295); (g) MRI of the left shoulder showing hypertrophic changes of the acromioclavicular joint with periatricular edema and tendenopathy or tendinitis of the rotator cuff insertion (Tr. 382). Other than pure speculation, plaintiff contends that the ALJ makes no legitimate argument as to why Dr. Barker's report is "less persuasive." According to plaintiff, the regulations and rulings presuppose a reasoned evaluation of any

medical opinion.  20 C.F.R. § 404.1527 (c) provides that "[r]egardless of its source we will evaluate every medical opinion that we receive."  Social Security Ruling (SSR) 96-8p provides that the "RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Plaintiff argues that the ALJ failed to do so.  Thus, her evaluation of Dr. Barker's opinion constitutes legal error and is bereft of substantial evidence.

Plaintiff also argues that the ALJ did not properly evaluate his credibility. The record is replete with objective evidence supportive of disability justifying plaintiff's complaints. The initial quote from the ALJ decision is boilerplate used in every unfavorable decision and, consequently, not worthy of consideration. Plaintiff contends that the ALJ further impugns plaintiff's credibility with the following conclusions: (a) plaintiff injured his eye while hammering or grinding and, consequently, his testimony that he hadn't worked, and is disabled is unreliable (Tr. 18, 19); (b) plaintiff stopped working due to a layoff (Tr. 18); (c) there is no evidence of significant deterioration in plaintiff's medical condition since the layoff (Tr. 18, 19); (d) plaintiff went on vacation to Arizona which is inconsistent with his claimed limitations on sitting and standing (Tr. 19, 20); (e) plaintiff testified that he could only walk one block but reported to Dr. Salomon he could walk for 45 minutes a day (Tr. 19); (f) plaintiff has not followed his doctor's

recommendation to exercise (Tr. 21); and (g) plaintiff has not followed his

doctor's recommendation to lose weight (Tr. 21). With respect to item (a) above,

plaintiff points out that the reported injury took place on July 21, 2010. (Tr. 312).

Plaintiff had earnings in 2010 of $12,497.86. (Tr. 137). The ALJ concluded that

plaintiff has not engaged in substantial gainful activity since August 1, 2009, the

alleged onset date, even though he worked after the alleged disability onset date

because this work was an unsuccessful work attempt. Although plaintiff earned

$12,497.86 in 2010, he testified at the hearing that these hearings were from sick

pay and accident health insurance. While plaintiff was called back on restricted

duty to paint, he injured his back after 4-5 weeks and thereafter discontinued his

restricted duty work. (Tr. 16). Plaintiff worked on restricted duty from August

2010 to September 5, 2010. (Tr. 140). According to plaintiff, the incident in July

2010 predates the return to work and, therefore, must be an isolated event

occurring at home. More importantly, plaintiff points out that the ALJ's

conclusion that plaintiff has worked belies her own finding that he has "not

engaged in substantial gainful activity since August 1, 2009." Thus, the ALJ's

conclusion is simply erroneous. In addition, an isolated activity at home does not

demonstrate same.

　　　With respect to Item (b) above, plaintiff's layoff was reported on January 7,

2010. (Tr. 318). Plaintiff's alleged date of onset is August 1, 2009, generally

equivalent to the date his chiropractor put him on restriction.  (Tr. 132, 133, 191).

He testified he was laid off about Christmas 2008 and collected unemployment

and sub pay.  (Tr. 46).  He was called to return to work 9 or 10 months later but his

employer would not return him due to restriction and kept him on unemployment

and sub pay.  (Tr. 46).  As indicated above, he did not actually return to favored

work until August 2010.  His last day of restricted work was September 5, 2010

after which he went on sickness and accident benefits.  (Tr. 32, 33, 46).

Consequently, plaintiff contends that the allegation of disability is 9 months after

the layoff making same of no consequence at all.  In any event, SSR 00-1c and

*Cleveland v. Policy Management Systems Corp*, 526 U.S. 795 (1999) provide for

the advancement of seemingly inconsistent claims.  Further, plaintiff contends that

if he is limited to unskilled sedentary work, he would be entitled to collect both

unemployment and disability insurance benefits.

　　　　With respect to Item (c) above, there is no evidence of significant

deterioration since the layoff, the response is as follows.  First, almost all of the

testing performed was performed after plaintiff was put on restriction by his

chiropractor.  Second, plaintiff is not required to prove deterioration but simply

disability.  Disability presupposes medical inadvisability.

　　　　With respect to Item (d) above, plaintiff's vacations, plaintiff contends that

the flight to Arizona probably takes 4 hours.  After takeoff and prior to landing

nothing would prohibit plaintiff from sitting or standing at will.  The ALJ

concedes that disability and vacations are not mutually exclusive.  (Tr. 19).  The

plaintiff did not testify that such travel was without discomfort.  Plaintiff

maintains that his travel to Arizona is irrelevant in determining disability.

    With respect to Item (f) above, the ALJ reports that " . . . he exercises . . ."

(17, 18).  This is consistent with plaintiff's testimony.  (Tr. 35, 36).  Finally, with

respect to Item (g), Social Security Ruling (SSR) 02-1p states: "We will rarely use

'failure to follow prescribed treatment' for obesity to deny or cease benefits."  In

summary, plaintiff contends that the ALJ's assessment of the facts is flawed and,

consequently, she has failed to give good and specific reasons for her assessment

of plaintiff's credibility, thereby committing legal error and failing to provide

substantial evidence for her conclusions.  The same mandates reversal and an

award of benefits.  However, the analysis doesn't stop here.  With respect to the

seven factors listed in *Berkowski* and SSR 96-7p, the ALJ's failure to assess

credibility is manifest.  There was little, if any, discussion with respect to Items 2,

3 or 7.  There was no discussion with respect to the reported side effects from

medications (Tr. 41, 42, 47 thru 49), Item 4, and the need to lay down (Tr. 35),

Item 6.  In conclusion, plaintiff contends that the ALJ failed to follow the

mandates of 20 CFR § 404.1529 and SSR 96-7p in assessing his credibility.  In

addition, she mischaracterized the evidence.  Consequently, plaintiff asserts that

her decision must be reversed and benefits be awarded.

Plaintiff next argues that the ALJ improperly evaluated plaintiff's severe impairments by failing to assess their impact on basic work activities and doing a function by function analysis in accordance with the 20 C.F.R. § 404.1521(b) and SSR 96-8p.  The ALJ classified a number of plaintiff's conditions as severe including spine disorder, arthritis and obesity.  SSR 02-1p.  In fact, the ALJ states ". . . that the claimant's obesity exacerbates his ability to perform basic work activities . . ." (Tr. 17).  However, according to plaintiff, the RFC does not include any impact on basic work activities such as standing, walking, lifting and carrying. Nor was there any "function by function analysis."  Plaintiff's incapacity to do light work would mandate an award of benefits, and therefore, the ALJ's failure to comply with the requirements above constitutes reversible error.

Plaintiff also claims that the ALJ did not evaluate the records of Dr. Ralph Raper, plaintiff's primary care physician.  (Tr. 192-271).  These records reveal chronic anxiety (Tr. 195) and depression.  (Tr. 219).  Test results show neuropathy (Tr. 202, 211), atelectatic change or infiltrate left lung base anteriorly (Tr. 247), and non specific T wave abnormality.  (Tr. 218).  In addition, she did not evaluate Exhibit 14F (Tr. 382), records from the Imaging Center, which revealed the left shoulder findings discussed above.  According to plaintiff, these records provide evidence of other conditions that, if considered, either separately or in

combination with 'severe" impairments, could have provided the basis for a

finding of disability.  In any event, Dr. Raper's records and the testing should have

been evaluated and plaintiff maintains that the failure to do so is reversible error.

Plaintiff asserts that the ALJ is obligated, and failed, to consider the

combination of "non-severe" impairments in conjunction with "severe"

impairments.  *Gooch vs. Sec of HHS*, 833 F. 2d 589, 591-592 (6th Cir. 1987).  SSR

96-8p also requires the consideration of both "severe" and "non-severe"

impairments on the ability to work.  According to plaintiff, the following

impairments, among others, were not assessed at all in accordance with SSR 96-

8p: depression, anxiety, pulmonary, cardiac, neuropathy, right elbow (Tr.  377),

knees (Tr. 376) and this is reversible error.

Next, plaintiff says the ALJ's reliance on the vocational expert testimony

was in error.  In response to the ALJ's question as to the impact of a "sit/stand

option," the VE indicated that there would be a "50 percent" reduction for the jobs

at the "light, unskilled" level.  (Tr. 56).  On cross-examination the VE disagreed

with the premise that "ordinarily unskilled jobs at the light or sedentary level

cannot be constructed for a sit/stand option . . .".  (Tr. 67).  The ALJ included a

"sit/stand option" in the residual functional capacity (RFC).  (Tr. 17).  SSR 96-9p

requires: "The RFC assessment must be specific as to the frequency of the

individual's need to alternate sitting and standing."  Plaintiff concedes that this

section pertains to only sedentary work, common sense dictates that it be considered in light work as demonstrated by the following: "Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12. Thus, plaintiff contends that the ALJ's hypothetical and RFC are deficient in this regard.

The VE testified that her testimony was consistent with the DOT (Dictionary of Occupational Titles) "except the sit/stand." (Tr. 57). 20 CFR § 404.1566(d) provides that the Social Security Administration will take administrative notice of reliable job information from certain publications including the DOT. However, vocational testimony must also be reliable and the vocational expert must explain any conflicts with the DOT and provide a reasonable explanation for same. *See* SSR 00-4p. An ALJ is prohibited from using vocational evidence that conflicts with regulatory policy or definitions (much of which is based on the DOT). First, the ALJ's hypothetical to the VE is defective in that it does not provide the frequency the need to sit or stand. Second, the vocational testimony conflicts with SSR 83-12, established regulatory policy. In summary, plaintiff contends that the decision of the ALJ must be reversed and benefits awarded.

C.    Commissioner's Motion for Summary Judgment

The Commissioner urges the Court to reject plaintiff's argument that the

ALJ committed reversible error by failing to address in the decision certain progress notes from his treating physician, Dr. Raper, and some imaging studies because all of the progress notes he references predate the alleged onset date (August 1, 2009) by at least one year, some by as many as three years. (Tr. 195, 202, 211, 218, 247). Similarly, the imaging study plaintiff references date back to 2005. (Tr. 382). According to the Commissioner, the ALJ was not required to address progress notes that were dated so remotely from the relevant period. These records referred to plaintiff's condition when he was still working, and because they were not time-relevant, they would have minimal probative value. *See e.g.*, *Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (medical records dated eight months after the date last insured were minimally probative). Moreover, the Commissioner points out that the ALJ did not disregard the relevant treatment notes of Dr. Raper; she squarely referenced the report in her decision. (Tr. 20).

Additionally, the Commissioner argues that the Court should reject plaintiff's claim that the ALJ failed to give good reasons for not assigning controlling weight to treating physician Dr. Baghdoian's October 2, 2011 opinion (Tr. 302-10). Dr. Baghdoian opined in October 2011 that plaintiff could sit for up to 20 minutes at a time, stand for up to 20 minutes at a time, and sit, stand, and walk for less than 2 hours total in an 8-hour day. (Tr. 303). He further opined that

plaintiff needed to shift positions at will as well as take unscheduled breaks. (Tr. 304). He limited plaintiff to lifting up to 10 pounds occasionally and 20 pounds rarely. (Tr. 304). Dr. Baghdoian opined that plaintiff could never bend, stoop, crouch, squat, or climb ladders, but could occasionally twist. (Tr. 304). He also opined that plaintiff could use grasp and turn/twist objects, perform fine manipulation, and reach in front or overhead for 50% of the 8-hour workday. (Tr. 304). According to the Commissioner, the ALJ considered the single examination report from this physician, dated October 18, 2010 and the resulting opinions that he issued a year later and found "certain aspects of the doctor's opinion . . . consistent with the residual functional capacity." (Tr. 21). However, she assigned limited weight to the opinion because of inconsistencies that she identified in the opinions. (Tr. 21). For example, the ALJ noted that while Dr. Baghdoian reported an abnormal gait, consultative examiner Dr. Salomon examined plaintiff in December 2010 and reported an ataxic yet stable gait, within normal limits. (Tr. 21, 277, 303). Dr. Baghdoian identified abnormal gait in one report, but denied spastic gait in another written the same day. (Tr. 303, 306). The ALJ noted that plaintiff did not require an assistive device, according to Dr. Salomon. (Tr. 21, 277). Dr. Baghdoian acknowledged as much in his own progress notes from October 2010 and in his opinion, thus undercutting the severity of a gait disturbance. (Tr. 273, 309). The ALJ also noted that, while Dr. Baghdoian opined

plaintiff could walk only one or two blocks without pain, Dr. Salomon noted that

plaintiff's report that he could walk for 45 minutes a day.  (Tr. 274, 308).  *See*

*Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by

conclusory statements of doctors, particularly where they are unsupported by

detailed objective criteria and documentation.").  The ALJ additionally found Dr.

Baghdoian's sitting restrictions (20 minutes at a time, no more than 2 hours a day)

inconsistent with plaintiff's testimony that he spent 75% of the day in his recliner

with his legs elevated. (Tr. 21, 48); *see Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir.

1988) (consulting examiner's opinion accepted over treating physician's where

treating physician rendered inconsistent opinions without justification).

The ALJ further noted other inconsistencies between the objective medical

findings and the extreme limitations in this treating source opinion.  (Tr. 21).  For

example, Dr. Baghdoian did not identify a need for plaintiff to elevate his legs

with prolonged sitting, and his examination findings revealed excellent range of

motion in the hips, with no presence of peripheral edema.  (Tr. 272-73).  X-rays

indicated only mild degenerative arthritis in the lumbar spine.  (Tr. 272, 380).

MRI studies revealed only mild spinal stenosis.  (Tr. 283).  A November 2009

physician's opinion advised only that plaintiff work no more than 40 hours at the

light exertional level and was thus consistent with the ALJ's RFC finding.  (Tr.

190).  Thus, the Commissioner contends that the ALJ gave good reasons for

declining to accord controlling weight to Dr. Baghdoian's opinions.

While plaintiff contends that consultative examiner Dr. Barker's 2011 opinion was erroneously rejected, the Commissioner maintains that this argument should not be found persuasive. Dr. Barker opined that Plaintiff "should be considered completely disabled from any type of manual labor" and that he was "totally and permanently disabled." (Tr. 371). The ALJ properly rejected Dr. Barker's conclusions of disability, as the ultimate determination of disability is reserved to the Commissioner and her designees, and opinions by others are not entitled to special significance. (Tr. 38); *see* 20 C.F.R. § 404.1527(e)(1)-(3). According to the Commissioner, the ALJ also properly noted that, contemporaneous with Dr. Barker's opinion that he could not perform at even a sedentary level, plaintiff traveled out of state. (Tr. 20).

According to the Commissioner, as the medical findings or other evidence of record failed to support all of the limitations in the opinions of Drs. Boghdoian and Barker, the ALJ was not required to give them significant weight. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (*en banc*) ("[T]he ALJ [reasonably found] . . . that others of Dr. Templin's many medical assessments of Combs were inconsistent with this assessment, and that Dr. Templin was therefore less than credible."). Given the lack of supportability in the medical evidence of record for both of these extreme and conclusory opinions, the Commissioner

contends that the ALJ properly rejected the unsupported portions. *See Price v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion.").

Plaintiff contends that the ALJ erred in discounting his credibility by improperly evaluating evidence of his daily activities, which included a period of work after the date of alleged disability onset, regular travel from Michigan to Arizona, and exercise. The Commissioner maintains that his arguments should be found unpersuasive. In evaluating plaintiff's credibility, the ALJ carefully considered the objective medical evidence, opinion evidence, and clinical findings, as well as plaintiff's symptoms and complaints of pain, the treatment received, and activities of daily living. (Tr. 16-21). The ALJ found that, although plaintiff's medically determinable impairments could be reasonably expected to produce the alleged symptoms, plaintiff's statements regarding the intensity, persistence and limiting effects of those symptoms were not fully credible. (Tr. 18).

First, in reviewing the objective medical findings, the ALJ noted a July 2010 hospital examination report of normal neck range of motion, and no back tenderness, lower extremity pain or neurological deficits. (Tr. 18, 313). She also

noted that Dr. Baghdoian's October 2010 examination indicated normal

interosseous relationships, no localizing signs of a disrupter, no peripheral edema,

(Tr. 73).  The ALJ further considered the lack of need for an assistive device, and

examination findings that indicated stable, normal gait.  (Tr. 21).  Looking to

treatment, the ALJ noted that plaintiff wore wrist braces at night.  (Tr. 18).  She

also noted Dr. Baghdoian's October 2010 observation that plaintiff's condition

could be treated conservatively with physical therapy and potentially, injection

therapy.  (Tr. 19, 273).  Indeed, in November 2010, Dr. Baghdoian had observed

that despite his imaging studies indicating some cervical issues, plaintiff was

"holding his own" and seemed to be doing well undergoing physical therapy,

rejecting anything more invasive such as surgery.  (Tr. 300).  According to the

Commissioner, this evidence suggests the pain was not as severe as he may have

represented, and certainly could figure into the credibility analysis.  *Cf. Waldridge*

*v. Sec'y of Health and Human Servs.*, 1992 WL 86530, at *2 (6th Cir. 1992)

(Claimant's refusal to undergo back surgery not reasonable).

The ALJ also considered the evidence of daily activities, which included

notes referencing plaintiff's frequent travel to locations as distant as Arizona.  (Tr.

20).  The ALJ noted that plaintiff traveled regularly to visit his wife there, as a

commuting arrangement, and thus could tolerate the long drive or flight.  (Tr. 19,

20).  The ALJ also took into account hospital records documenting his

participation in activities requiring physical strength and dexterity, such as hammering and grinding, which belied his claims of significant limitation. (Tr. 312); *see Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (appropriate to consider hunting, walking, and working on roof among activities). The ALJ further noted that plaintiff had worked for a brief period after the alleged onset date, which was an appropriate consideration in evaluating credibility. Contrary to plaintiff's argument, the Commissioner asserts that it was not inconsistent for the ALJ to consider evidence of post-onset work activity, even if that activity did not rise to the level of substantial gainful activity. *See Miller v. Comm'r of Soc. Sec.*, 2013 WL 1705026 at *2 (6th Cir. 2013) (ALJ did not err in considering claimant's part-time work). In sum, the Commissioner maintains that the ALJ conducted a full credibility assessment and substantial evidence supports her finding.

Plaintiff challenges the ALJ's reliance on the VE's testimony. He argues that the ALJ could not rely on the VE's response to the hypothetical question, because Social Security Ruling (SSR) 83-12 provides that unskilled work typically is not structured to accommodate a sit/stand option at will. However, according to the Commissioner, plaintiff disregards the next line in SSR 83-12, which advises that a VE be consulted to clarify the implications for the occupational base. SSR 83-12. The Commissioner contends that that is precisely what the ALJ did here, and the VE testified that assuming a sit/stand option at will, there still remained, in

2:13-cv-11344-GCS-MJH   Doc # 17   Filed 02/20/14   Pg 25 of 51   Pg ID 534

the regional area, machine tender jobs (2,500), packer jobs (3,000) and small product assembler jobs (4,000) that such an individual could perform (Tr. 56).

The Commissioner also asserts that this Court should reject plaintiff's argument that the ALJ was required to specify the frequency for the sit/stand option.  The VE stated that the jobs she identified would accommodate a sit/stand option at will, even if the individual could tolerate six hours of sitting a day but only two hours of standing and walking (during the period of alternating sitting and standing).  (Tr. 65-66).  Moreover, the ALJ could include a sit-stand option, even when such an option is not indicated in the DOT, since the DOT is only one source that can be used to assess the availability of jobs the claimant can do.  *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir.1994).  The Commissioner also points out that the plaintiff was given the opportunity to cross-examine the VE on the sit/stand option and the affect that the durational limits on sitting, standing, and walking would impose, and the VE's testimony resolved those questions.  Thus, according to the Commissioner, the ALJ's decision was supported by substantial evidence, and it should be affirmed.  42 U.S.C. § 405(g).

Finally, the court may reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and "the proof of disability is overwhelming or proof of disability is strong and evidence to the contrary is lacking."  *See Faucher v. Sec'y. of Health and Human Servs.*, 17 F.3d

171, 176 (6th Cir. 1994), citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir.

1985); *see also Newkirk v. Shalala*, 23 F.3d 316, 318 (6th Cir. 1994) (The Court

was "obliged" to remand the case where the ALJ's factual findings were not

supported by substantial evidence and the record did not establish that the plaintiff

was entitled to benefits).  According to the Commissioner, this Court should

affirm the decision finding plaintiff not disabled.

     D.    <u>Plaintiff's Reply</u>

     According to plaintiff, he does not have to prove total disability in order to

be eligible for benefits.  Rather, he only needs to establish that he was not capable

of performing light work.  According to the ALJ decision, the following "light"

jobs were identified as consistent with the hypothetical i.e. "machine tender"

(DOT #732.685-034-Exhibit A), "packer" (DOT # 559.687-074-Exhibit B) and

"small products assembler" (DOT #739.687-030-Exhibit C).  Plaintiff points out

that the ALJ found that he suffered from "severe carpal tunnel syndrome"

mandating a restriction of no more than "frequent handling."  (Tr. 16, 17).

Handling is defined as "seizing, holding, grasping, turning or otherwise working

primarily with the whole hand or hands."  SSR 85-15.  Frequent "means occurring

from one-third to two-thirds of the time."  SSR 83-10.  The VE testified that a

restriction of "use of the hands for grasping, turning and twisting objects to 50%

of an 8 hour working day" would preclude the light jobs identified in response to

the ALJ's hypotheticals.  (Tr. 60, 61).  According to plaintiff, this limitation was

identified by Dr. Michael Baghdoian, plaintiff's treating orthopedic surgeon, and

was unchallenged by the ALJ.  (Tr. 304, 305 309, 21).  Therefore, plaintiff

contends that the ALJ's limitation as to frequent handling precludes his capacity to

perform the identified light jobs mandating an award of benefits.

The ALJ found that plaintiff needed a "sit/stand option."  (Tr. 17).  Contrary

to SSR 96-9p, the ALJ did not identify the frequency of the need to change

positions.  The VE testified that a limitation of less than 2 hours of standing

and walking in an 8 hour working day would preclude "light" work.  (Tr. 59).  The

VE conceded that "if a person is up and down constantly" that: "well, we

shouldn't give a sit/stand at-will and, you know, it's a bench level."[2]  (Tr. 65).

Finally, if such an option causes him to be "off task 20 percent of the workday,"

work would be precluded.  (Tr. 56).  Accordingly, plaintiff contends that if, with

the option, he is limited to less than 2 hours of standing and walking in an 8 hour

working day or needs to be up and down constantly, an award of benefits is

mandated.  In light of this, plaintiff argues that the Commissioner has failed to

sustain its burden of going forward and benefits are mandated.

According to plaintiff, the ALJ's decision does not state that Dr. Barker's

opinions reflect on an "issue reserved for the Commissioner."  (Tr. 20).  In *Hyatt*

---

[2]  According to plaintiff, "bench level" is sedentary work.

*v. NLRB*, 939 F.2d 361, 367 (6th Cir. 1991), the court refused to consider grounds for determination not relied on by the agency including "appellate counsel's post hoc rationalization." In any event, plaintiff contends that Dr. Barker's conclusions on incapacity to do manual labor, work in the "steel business," do sedentary work, and the need to avoid prolonged sitting, frequently lay down and change position do not, individually, reflect on the ultimate issue of total incapacity to work at all. (Tr. 371). Plaintiff also points out that the VE concedes that the need to lay down frequently, in and of itself, precludes work. (Tr. 60).

According to plaintiff, the ALJ rejects Dr. Boghdoian's limitations as to sitting, standing and walking yet accepts other restrictions, including lifting, carrying and the amount of time off task, as "consistent with the residual functional capacity." (Tr. 21). The ALJ offers no comment on other restrictions, which include the need to walk around every 20 minutes for 10 minutes (Tr. 304, 308) and absences 3 or more times per month (Tr. 305, 310), which would preclude all work. (Tr. 58, 59). In addition, the incapacity to stoop and bend precludes sedentary work (Tr. 304, 309, 60) and the need for 2 unscheduled breaks per 8 hour working day lasting 10 minutes apiece would preclude unskilled work. (Tr. 304, 308, 60). Arguably, both would prohibit the light work described. Plaintiff points out that a focus on isolated parts of the record will not support diminishing the weight of a treating source opinion. *Gayheart v. Commissioner*,

710 F. 3d 365, 378 (6th Cir. 2013).

The Commissioner alleges "[the ALJ] assigned limited weight to the opinion [of Dr. Baghdoian] because of inconsistencies . . ." (Defendant's Brief, page 16). One such inconsistency is that " . . . Dr. Baghdoian reported . . . an abnormal gait; yet the consultative examiner found no such problem . . .". (Tr. 21). According to plaintiff, the consultative examiner, Dr. Salomon, found an "ataxic gait." (Tr. 277). In addition, plaintiff argues that the Commissioner "cherry picks" normal findings while ignoring positive findings noted both in the report and the ALJ's summary, including chronic lumbosacral arthralgia, radiculopathy, sacroiliitis, altered back postural mechanics, diffuse tenderness of the lower back and a crooked gait. (Tr. 19, 273). The Commissioner also alleges that a " . . . November 2009 physicians opinion advised only . . .work no more than 40 hours at the light exertional level . . . consistent with the ALJ's RFC . . ." (Defendant's Brief, page 17). However, the Commissioner fails to report that these are chiropractic records, not an "acceptable medical source." (Tr. 187, 190); *see* 20 CFR§ 404.1513 (a) and (d). According to plaintiff, there are no medical records from any physician conflicting with the findings of Dr. Baghdoian and Dr. Barker, including the consultative report.

While the Commissioner argues that Dr. Raper's reports were not relevant because they predated the onset date by one to three years, the ALJ still referenced

them.  (Defendant Brief, page 14).  Plaintiff asserts that the conditions diagnosed and the records generated should have been considered anyway because such conditions could have worsened or caused disability in combination with other impairments. In addition, plaintiff points out that there were unconsidered office notes generated after the onset date.  (Tr. 191, 193, 194).  Finally, plaintiff notes that the only reference to Dr. Raper's records was an isolated excerpt with respect to plaintiff being "out of town."  (Tr. 20).  Plaintiff contends that the full scope of Dr. Raper's records should have been analyzed, rather than cherry-picked.  And, plaintiff agrees with the Commissioner that plaintiff's attempt to work for a brief period after the alleged onset date was an appropriate consideration in evaluating credibility because his bona fide attempt to return to work, in spite of incapacity, enhances his credibility, rather than undermines it.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996). The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted). "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003). Courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing,

*Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

The ALJ's analysis of plaintiff's long-time treating physician's opinion is as follows:

> Dr. Baghdoian prepared medical opinions on October 17, 2011, as to the claimant's ability to work (Exhibits 8F and 9F). However, due to certain inconsistencies in the medical opinions, limited weight has been assigned to them.
>
> Dr. Baghdoian reported that the claimant had an abnormal gait; yet the consultative examiner found no such problem and specifically commented that the claimant did not need any assistive devices for walking. The claimant could only walk one or two blocks without pain; yet the claimant told the consultive examiner that he could walk up to 45 minutes each day; the claimant could sit for only 20 minutes and "more than 2 hours" in a day; yet the claimant testified he spends 75% of his time in a recliner. The claimant could stand for 20 minutes and "more than two hours; however his total ability to sit, stand and walk was less that 2 hours in an 8-hour workday.
>
> The internal inconsistency in Dr. Baghdoian's medical opinion was unexplained. The claimant testified that he elevated his leg to waist level; yet his treating source said the claimant did not need to elevate his leg. Dr. Baghdoian restricted plaintiff to lifting less than 10

> pound, but said he could on rare occasion lift up to 20
> pounds. Dr. Baghdoian felt that the claimant would be
> off task from lack of attention and concentration 10% of
> the working day.
>
> Certain aspects of the doctor's opinion are in fact
> consistent with the residual functional capacity
> determined in this decision, such that exacerbation of
> symptomatology should not occur.

(Dkt. 7-2, Pg ID 51). As plaintiff points out, the consulting examiner did find that

plaintiff had an abnormal gait. Specifically, Dr. Salomon found an "ataxic gait"

(Tr. 277) which is defined as "an unsteady, staggering gait pattern." Tabers

Cyclopedic Medical Dictionary, Edition 21, p. 918 (2009). The undersigned does

not see how plaintiff's statement that he could walk up to 45 minutes a day on one

hand and only a couple of blocks at a time without pain necessarily is either

inconsistent or undermines the opinion of plaintiff's long-term treating physician.

The undersigned also agrees that plaintiff sitting in his recliner with his legs

elevated for more than 2 hours per day is not comparable to Dr. Baghdoian's

opinion that plaintiff could only sit for 20 minutes at a time in a work setting. In

addition, it is obvious that Dr. Baghdoian completed the form incorrectly by

marking two inconsistent boxes in response to the same question, given that he

indicated that plaintiff could only sit for 20 minutes at a time and that he could sit

for more than 2 hours at a time. This error is, however, not sufficient to

undermine the entirety of the opinion and the treating history on which it is based.

The undersigned fails to see why plaintiff's testimony that he was most comfortable with elevating his legs somehow undermined his treating physician's opinion that he would not be required to have his legs elevated in a competitive work setting. It also makes little sense to conclude that Dr. Baghdoian's opinions that plaintiff could lift 10 pounds "occasionally" was somehow inconsistent with his opinion that plaintiff could "rarely" lift 20 pounds. There is nothing inconsistent about these statements, given that Dr. Baghdoian did not opine that plaintiff could never lift more than 10 pounds. Thus, the undersigned concludes that the ALJ did not give sufficiently good reasons for declining to give Dr. Baghdoian's opinion controlling weight.

Moreover, if the ALJ determined that plaintiff's treating physician's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009). This was not done either; rather, the ALJ gave the opinion "limited weight" without a discussion of these factors. And, even if Dr. Baghdoian's opinion was not entitled to controlling weight, it was still entitled to deference. 20 C.F.R. § 404.1527(d)(2)(i). As explained in

SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion
> is not entitled to "controlling weight," not that the
> opinion should be rejected. Treating source medical
> opinions are still entitled to deference and must be
> weighed using all of the factors provided in 20 CFR
> 404.1527 and 416.927. In many cases, a treating source's
> medical opinion will be entitled to the greatest weight
> and should be adopted, even if it does not meet the test
> for controlling weight.

The ALJ failed to adequately address why Dr. Baghdoian's opinions should not be

given controlling weight or even deference, as required by the regulations. 20

C.F.R. § 404.1527(d)(2). Thus, the undersigned concludes that a remand is

necessary so the ALJ may re-evaluate the treating physician opinion and all

supporting treatment evidence. On remand, the ALJ may wish to clarify Dr.

Baghdoian's opinions regarding how long plaintiff can sit at one time.

As to Dr. Barker's opinions, as a non-treating physician, the ALJ was not

required to give his opinions any special consideration. And, no weight need be

given to his opinions on the issue of whether plaintiff was "disabled" as that issue

is reserved to the Commissioner. In addition, however, Dr. Barker offered other

opinions to which the ALJ gave short-shrift. If these opinions were inconsistent

with other medical opinions of record, the ALJ would have been justified in

rejecting Dr. Barker's opinions in their entirety.  However, plaintiff correctly

points out that Dr. Barker's opinions were consistent with the other medical

opinions of record.  *Jones v. Astrue*, 2011 WL 1399834 (W.D. Ky. 2011) report

and recommendation adopted, 2011 WL 1399848 (W.D. Ky. Apr. 2011) ("One

obvious inconsistency that eliminates the need to give controlling or great weight

to a particular medical source opinion is a contrary opinion from another source

about the same matters.").  Given that the ALJ will need to re-assess the treating

physician opinion evidence, she should also reconsider her assessment of Dr.

Barker's opinions, to the extent he offers them on issues other than those reserved

to the Commissioner.

      This case is also complicated by the fact that the ALJ did not rely on any

other medical opinions to determine equivalence.  The single-decision maker

(SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2).[3]  This regulation

provides streamlined procedures as an experiment, in which State Agency

---

      [3]  The Court raises this issue *sua sponte*, given the serious nature of the error and the
pattern of repetition of this same error since the implementation of the single decision-maker
model in Michigan and given that this matter will have to be remanded, in any event, for further
consideration of the treating physician opinion evidence.  Notably, in Social Security cases, the
failure to submit a particular legal argument is "not a prerequisite to the Court's reaching a
decision on the merits" or a finding, *sua sponte*, that grounds exist for reversal. *Reed v. Comm'r
of Soc. Sec.*, 2012 WL 6763912, at *5 (E.D. Mich. 2012), citing *Wright v. Comm'r of Soc. Sec.*,
2010 WL 5420990, at *1-3 (E.D. Mich. 2010), *adopted by* 2013 WL 53855 (E.D. Mich.  2013);
*see also Buhl v. Comm'r of Soc. Sec.*, 2013 WL 878772, at *7 n. 5 (E.D. Mich. 2013) (plaintiff's
failure to raise argument did not prevent the Court from identifying error based on its own review
of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. 2013).

disability examiners may decide cases without documenting medical opinions from State Agency medical consultants. The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan. *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011). This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing. *Id*. Most significantly, it allowed the state agency employee (the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants. *Id*., citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2). The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05. Plaintiff's physical impairments were evaluated by an SDM, Norbert Bauer, who concluded that plaintiff could perform medium work. (Dkt. 7-8, Pg ID 101-107). Thus, no medical opinion was obtained at this level of review, in accordance with this model.

While the ALJ did not rely on the opinion of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand. As set forth in *Stratton v. Astrue*, — F.Supp.2d

—; 2012 WL 1852084, *11-12 (D. N.H. 2012), SSR 96-6p describes the process

by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for
> deciding the ultimate legal question whether a listing is
> met or equaled. As trier of the facts, an administrative
> law judge ... is not bound by a finding by a State agency
> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding*
> *policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the*
> *issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the*
> *record as expert opinion evidence and given appropriate*
> *weight.*

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an

ALJ who makes a step-three equivalence determination without expert-opinion

evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter. *Id.* at. *12; citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted).  This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form.  *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question.").  There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments in this record.  (Dkt. 7-3, Pg ID 100).

The great weight of authority[4] holds that a record lacking any medical advisor opinion on equivalency requires a remand. *Stratton*, at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record); *Wadsworth v. Astrue*, WL 2857326, at *7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether Mr. Wadsworth's impairments equaled a listing").

While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011) and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), the undersigned does not find these cases persuasive. In both cases, the court concluded that because the regulations permitted an SDM to make disability determination without a medical consultant that the ALJ is, therefore, also permitted to do so where the "single decisionmaker" model is in use. Nothing about the SDM model changes the ALJ's obligations in the equivalency analysis. *See Barnett v.*

---

[4] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id.*, citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2 n. 3 (D. Me. 2003).

*Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).

Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is any different in a case where the SDM model is used.  While the SDM is not required to obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing appears to have modified the ALJ's obligations and it makes little sense to conclude that the ALJ is relieved from obtaining an expert medical opinion in SDM cases.  Thus, the undersigned's analysis does not alter the SDM model, which leaves the SDM discretion as to whether a medical expert is consulted as to physical impairments.  Rather, the undersigned's analysis leaves intact the requirements imposed on an ALJ in making an equivalency determination, which do not otherwise appear to be modified by the SDM model.  *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013

47

WL 1192301, *8 (E.D. Mich. 2013) (A medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated.).  In this case, while a consulting examiner was utilized, Dr. Salomon offered no opinions on the issue of equivalence.  (Dkt. 7-7, Pg ID 309-314); *see e.g.*, *Caine v. Astrue*, 2010 WL 2102826, *8 (W.D. Wash. 2010) (Where the state agency consultant offered no findings on equivalence, the ALJ should obtain an updated medical expert opinion in order to meet her obligation to fully and fairly develop the administrative record.).

The omission of an impairment from the step two findings does not warrant remand because the ALJ found that plaintiff had other impairments that met the criteria for severity at step two, and thus proceeded to step three in the sequential analysis.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that because the Secretary had found at least one other "severe" limitation, the severity of Miziarz's cervical condition was irrelevant for the step two analysis).  If a claimant has more than one impairment, the ALJ must consider all medically determinable impairments when assessing the RFC, including those that are not severe.  20 C.F.R. § 404.1545(a)(3); *Fisk v. Astrue*, 253 Fed.Appx. 580, 584 (6th Cir. 2007) (noting that once the ALJ determines at least one severe impairment, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

A step two omission is of "little consequence," provided that the ALJ considered "all impairments, severe and nonsevere," in crafting the RFC.  *See Pompa v. Comm'r of Soc. Sec.*, 73 Fed.Appx. 801, 803 (6th Cir. 2003).

Here, plaintiff acknowledges that the step two screening process is essentially a tool used to dispose of groundless claims, based on the medical evidence alone.  Plaintiff contends, however, that the ALJ's failed to acknowledge his multitude of other documented impairments.  In the view of the undersigned, any error committed by the ALJ in not finding certain impairments severe at step two does not, by itself, warrant remand.  Rather, in this case, the problem is not the step two finding, but the failure to utilize a medical advisor on the issue of equivalency when faced with a variety of conditions, symptoms and illnesses, along with medical opinions regarding plaintiff's limitations, as discussed in detail above.  *See e.g.*, *Mills v. Comm'r*, 2013 WL 967567, *8 (W.D. Mich. 2013) ("[W]hile the ALJ's finding that Plaintiff's alleged mental impairments are not severe is not supported by substantial evidence, such is not the basis for remanding this matter for further factual findings.  Instead, it is the ALJ's faulty RFC determination, informed by his unsupported assessment of the evidence, that justifies remand.").

As to plaintiff's credibility, that will necessarily have to be reassessed on remand, given that the assessment of the medical opinions is so tied to a plaintiff's

2:13-cv-11344-GCS-MJH    Doc # 17    Filed 02/20/14    Pg 50 of 51    Pg ID 559

credibility.  In addition, this will require a reassessment of the vocational expert

evidence on remand, given that plaintiff's RFC has been called into question.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings under

sentence four.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

Report and Recommendation
Cross-Motions for Summary Judgment
*Pizzo v. Comm'r*; Case No. 13-11344

etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 20, 2014             s/Michael Hluchaniuk
                                    Michael Hluchaniuk
                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 20, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Thomas J. Bertino, Vaness Miree Mays, AUSA, and the Commissioner of Social Security.

                                    s/Tammy Hallwood
                                    Case Manager
                                    (810) 341-7887
                                    tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Pizzo v. Comm'r*; Case No. 13-11344